## UNITED STATES *v.* MULHOLLAND.

### (*District Court, D. Kentucky.* April 21, 1892.)

1. **POST OFFICES—LARCENY FROM MAILS—EVIDENCE—HEARSAY.**
   Evidence of an admission of the theft of a registered letter, made by a person since deceased, is not admissible upon the trial of a postmaster for the embezzlement of such letter, as it is not such a declaration against interest as admits of the introduction of hearsay evidence.

2. **SAME—EVIDENCE—REMOTENESS.**
   Evidence is not admissible in such a case that the declarant was caught in the act of stealing money from the post office nearly six months after the letter had been stolen, especially as it was not shown that he could have had access to such letter in the course of his official duties or otherwise.

3. **NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—EX PARTE AFFIDAVITS.**
   *Ex parte* affidavits, upon motion for a new trial, made by witnesses for the state, containing statements more favorable to the defendant than the testimony given at the trial, will not sustain a motion for such new trial.

At Law.

At the November term, 1891, in the district court of the United States for the district of Kentucky, the grand jury returned an indictment against defendant, as follows:

"*United States of America, District of Kentucky—sct.:* In the district court of the United States for the sixth judicial circuit and district of Kentucky, held at Paducah, November term, in the year of our Lord eighteen hundred and ninety-one. *First Count.* The grand jurors of the United States of America, impaneled and sworn, and charged to inquire in and for the district of Kentucky, on their oath present that Hugh Mulholland, late of the district aforesaid, on the seventeenth day of July, in the year of our Lord eighteen hundred and ninety-one, in the district aforesaid, being then and there employed in a department of the postal service of the United States, to wit, as postmaster at Paducah, Kentucky, feloniously did secrete and embezzle a certain letter, which had then and there come into the possession of the said Hugh Mulholland, and which said letter was intended to be conveyed by mail of the United States, and was then and there addressed to M. A. Sills & Son, Model, Tennessee, and which said letter then and there contained articles of value, to wit, two hundred and eighty-seven and twenty-nine hundredths dollars, consisting of United States treasury notes and national bank notes, and of the value of $287.29, and a further description of which said letter and its contents is to the jurors aforesaid unknown; against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided. Section 5467, Rev. St. par. 1. *Second Count.* And the grand jurors aforesaid, upon their oath aforesaid, do further present that the said Hugh Mulholland on the seventeenth day of July, in the year of our Lord eighteen hundred and ninety-one, in the district aforesaid, being then and there employed in a department of the postal service of the United States, to wit, as postmaster at Paducah, Kentucky, feloniously did steal and take certain articles of value, to wit, treasury notes of the United States and national bank notes, amounting in the aggregate to, and of the value of, two hundred and eighty-seven dollars, out of a certain letter then and there addressed to M. A. Sills & Son, Model, Tennessee, which said letter had then and there come into his possession in the regular course of his official duties, and which said letter was then and there intended to be conveyed by mail of the United States, and which said letter was not delivered to the party to whom it was directed, and a further description of which

said letter and its contents is to the jurors aforesaid unknown; against the peace and dignity of the United States, and· contrary to the form of the statute in such case made and provided. Section 5467, Rev. St. par. 2. *Third Count.* And the grand jurors aforesaid, upon their oath aforesaid, do·further present that the said Hugh Mulholland, on the seventeenth day of July, in the year of our Lord eighteen hundred and ninety-one, in the district aforesaid, feloniously did steal and take from and out of the mail of the United States, to wit, out of the post office at Paducah, Kentucky, a certain letter, which said letter was then and there directed to M. A. Sills & Son, Model, Tennessee, and a further description of which said letter is to the jurors aforesaid unknown; against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided. Section 5469, Rev. St. par. 1. *Fourth Count.* And the grand jurors aforesaid, upon their oath aforesaid, do further present that the said Hugh Mulholland, on the seventeenth day of July, in the year of our Lord eighteen hundred and ninety-one, in the district aforesaid, feloniously did take from the mail of the United States, to wit, out of the post office at Paducah, Kentucky, a certain letter then and there addressed to M. A. Sills & Son, Model, Tennessee, and did then and there open and embezzle said letter, which said letter then and there contained articles of value, to wit, United States treasury notes and national bank notes of the value of two hundred and eighty-seven dollars, and a further description of which said letter and its contents is to the jurors aforesaid unknown; against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided.

"GEO. W. JOLLY, United States Attorney."

On the 5th and 6th days of April, 1892, the defendant was tried, and the jury returned a verdict as follows:

"We, the jury, find the defendant guilty as charged in the within indictment."

After the verdict was rendered the defendant moved the court to set aside the verdict, and grant a new trial, on the following grounds, to wit:

"The defendant, Hugh Mulholland, Jr., moves the court to set aside the verdict of the jury, and grant a new trial herein, for the following reasons, to wit: (1) The verdict of the jury is contrary to the law, as given by the court in his charge, and against the evidence. (2) Because of errors committed by the court, in this: That the defendant offered to prove on the trial by the witness Samuel Williams that in a conversation between the said witness and one Edward King, in December, 1891, in the town of Paris, Tennessee, said King stated that he had to leave this country; that he was guilty of taking the registered letters that said Mulholland was charged with taking. To the introduction of said testimony the government objected, and the court sustained said objection, and would not permit the said testimony to be introduced; to which ruling of the court the defendant objected and excepted at the time, and still objects and excepts. (3) Because of the errors committed by the court, in this: That the defendant offered to prove on the trial by the witness Miss Lena Henneberger that the said King in December, 1891, in the city of Paducah, Kentucky, the post office in the said city, was caught in the act of stealing a twenty-dollar gold piece from the money drawer in the said post office; that said King returned the money, and confessed to her that he had taken the said money, and that said King on July 16 and 17, 1891, was in the employ of the postal service, and was in Paducah daily during said month; that the government objected to the introduction of the said testimony, and the court sustained the said objection, and refused to permit said

introduction of said testimony; to which ruling of the court the defendant objected and excepted at the time, and still does object and except. (4) Because since the trial of this case new evidence in behalf of the defendant has been discovered in this, to wit: That the government's witness James Withrow, before the trial of this case, told H. E. Thompson, of the city of Paducah, that he (Withrow) remembered to have seen the letter directed to the postmaster at Model, Tennessee, inclosed in a registered envelope at the time Miss Henneberger says she saw the said letter, and which is the same letter mentioned in the indictment; and that this testimony was not known to the defendant until since the verdict of the jury. Wherefore the defendant prays for a new trial."

*George W. Jolly,* U. S. Atty.

*Wm. Lindsay, St. John Boyle, J. C. Wicliffe, Burnett & Dallam,* and *Frank Hagan,* for defendant.

BARR, District Judge. The defendant has filed grounds for a new trial, and as they present an interesting question, and the motion is of much importance to the defendant, I have considered the motion with care.

The second and third grounds are the most important, and will be considered first. They are that the court erred in not allowing the defendant to prove by Miss Henneberger that one King was, in December, 1891, caught in the act of stealing a $20 gold piece from the money drawer of the post office at Paducah; and that he then confessed he had taken the money, and returned it; and that he was on the 15th and 17th of July, 1891, in the railway postal service, and was in Paducah daily during the month of July, 1891. And that the court erred in not allowing the defendant to prove by Samuel Williamson that said King in the month of December, 1891, in the town of Paris, Tenn., told him (Williamson) that he (King) had to leave the country, and that he was guilty of taking the registered letters the defendant was charged with taking. The defendant proposed to prove by this witness that this conversation was a day before King killed himself, and after the stealing of the gold piece from the money drawer of the post office. The defendant was permitted to prove any fact or circumstance which would show, or tend to show, that other persons than himself had access to the registered letter apartment, or had possession of the registered letter after it was received by the defendant, or the opportunity to get into the registered letter apartment, or to handle the registered letter, or to have access to it in any way whatsoever. We thought the fact that a postal clerk was caught stealing in the same post office, nearly six months after the registered letter and contents were charged to have been taken, was too remote, and only calculated to mislead the jury. We still think the theft of King committed in December did not throw the slightest light upon who committed a theft the previous July, especially as it was not shown that King was ever in, or had access to, the registered letter apartment, or that he had access, or could have had access, to this registered letter in the course of his official duties or otherwise. The fact that King was caught stealing in December might tend to prove that he was capable of

stealing in the previous July, and thus increase the probability of the truth of his admission of guilt of having stolen the registered letter in July, but as independent evidence it is not admissible. If admissible at all, it must be in connection with King's statement which he is said to have made to Williamson. The counsel for defendant has not pressed this ground for a new trial, and I therefore proceed to consider whether the statement said to have been made by King to Williamson is competent evidence.

This statement of King was not made under the solemnity of an oath, or the fear of the penalties denounced by the law for false swearing, nor was the statement made subject to a cross-examination. Williamson's statement as to what was said by King would have been under oath, and subject to cross-examination; yet it is clearly hearsay, or, as Mr. Roscoe calls it, "second-hand" evidence. This is admitted by the learned counsel, but he insists that King's statement was made against his own interest, being the acknowledgment of a crime that destroyed his character, and rendered him liable to punishment for an infamous crime, and that it is, and should be, an exception to the general rule which excludes hearsay as evidence. It is insisted that this is a clearly recognized exception to the general rule as to hearsay evidence when the party making the statement is dead, in civil cases; and, as the rules of evidence are the same in criminal cases as in civil ones, this statement of King is competent evidence for defendant under the exception. Mr. Greenleaf states this exception most broadly, thus:

"This class embraces not only entries in books, but all other declarations or statements of facts, whether verbal or in writing, and whether they were made at the time of the fact declared, or at a subsequent day. But, to render them admissible, it must appear that the declarant is deceased, that he possessed competent knowledge of the facts, or that it was his duty to know them, and that the declarations were at variance with his interest." 1 Greenl. Ev. § 147.

This, we think, is too broad a statement of the exception, and not sustained by the authorities, at least as to recent events; but, assuming that such is the law in civil cases, the inquiry is, does it extend to criminal ones? We have not been referred to or seen an authority, English or American, where this kind of evidence has been admitted in a criminal case. The English cases declare that the adverse interest which the deceased must have had to make his statement competent must be of a pecuniary nature, and that the apprehension of possible danger of a prosecution is not sufficient to admit such statements. *Higham* v. *Ridgway*, 10 East, 109; *Sussex Peerage Case*, 11 Clark & F. 108. The latter case was in the house of lords in 1844, and the question was as to the legality of a marriage upon which depended the right of the claimant to a peerage and a large estate. It was attempted to prove the statements of Mr. Gunn, who was said to have been the officiating clergyman who married the mother and father of the claimant, to his son, in regard to said marriage, in 1793. It was insisted that this statement was within the exception as to hearsay evidence, because Mr. Gunn had violated

the statute in regard to marriage, and subjected himself to a penalty; hence his statement to his son in regard to the marriage was against his interest. The judges (12, I believe) unanimously agreed that this statement was not competent. The reason given was that the fear of or the liability to be prosecuted under the marriage act was not sufficient to bring the statement within the exception as to hearsay evidence. This was a civil action, and the decision has not been overruled or modified in England. Nor is there any American case to the contrary known to us, except the case of *Coleman* v. *Frazier*, 4 Rich. Law, 146. This was a civil action against the postmaster to recover the value of a letter containing money, because of the negligence of the postmaster. It appears that Meigs, who had been allowed by the postmaster access to the letters in the office, informed the defendant that he had stolen the money from the letter. This was allowed to be proven, and the superior court of South Carolina sustained the ruling of the lower court. The court says:

"I placed its admission on two grounds: (1) That the defendant was present, heard it, and received it as true; and (2) that it was the admission of an act committed by the party making it, against his interest, and subjecting him to infamy and heavy penal consequences, and who was dead at the trial. In either or both these points of view, I think the evidence was admissible, but more especially when both are combined."

This case was decided in 1850, but does not notice the *Sussex Peerage Case*, decided in 1844; but the reasoning of the court in *Coleman* v. *Frazier* was the opposite of that taken in that case. If known to the court, it was evidently not intended to be followed. That case, as well as the *Sussex Case*, was a civil action, and is not an authority for admitting such statements in a criminal case. Indeed, no case has been found by me, or been cited, which sustains the admission of such evidence in a criminal case.

There are many cases in America where the statements or admissions of other parties than the accused have been attempted to be proven, for the purpose of endeavoring to show the innocence of the accused; but there are none known to me where such admissions or statements have been allowed as evidence, as being under the exception now under consideration. This fact is a strong argument against the contention that this exception as to hearsay evidence is applicable to criminal cases as well as civil ones. It is true, in all the cases which I have examined, the persons who made, or are alleged to have made, the admissions or confessions, were seemingly alive; at least, the cases do not show they were dead. But if this exception as to hearsay be applicable to criminal as well as civil cases, it is strange the effort has not been made to introduce such statements or admissions, even though the person making them was alive and within the jurisdiction of the court, since the living person who may have made the admission or confession of a crime for which another was being tried could not be compelled to testify against himself upon the stand. If, therefore, the admission of a person to another, not under oath, that he has committed a crime for which another

is indicted, is not within the rule as to hearsay, and competent evidence if the party thereafter dies, why should it not be competent if the party is still living, as he cannot be compelled to testify, and thus criminate himself? The admission or confession is as likely to be true in the one instance as the other.

It is unnecessary to review the American cases, but a few will be mentioned. In *Snow* v. *State*, 58 Ala. 375, Daniel Smith, Frank Snow, and Elbert Smith were jointly indicted for stealing cotton, and Frank Snow and Elbert Smith were being tried. Daniel Smith not being on trial, the accused (Snow and Elbert Smith) offered to prove by two witnesses that Daniel Smith had told them that he (Smith) had broken into the lint room, and that Frank Snow and Elbert Smith were inno-cent; that, after he broke open the lint room and took out the cotton, he hired Frank Snow and Elbert Smith to haul the cotton away for him. This was excluded in the lower court, and the ruling was sustained by the supreme court of the state. See, also, *Snow* v. *State*, 54 Ala. 138. In *Daniel* v. *State*, 65 Ga. 200, the offense charged was stealing cattle. The accused on his trial offered to prove by two witnesses that they had heard Henry Dixon say "that he had stolen the steers for which the defendant (accused) was indicted, and that he was sharp enough to get out of it." This evidence was rejected. In *Greenfield* v. *People*, 85 N. Y. 75, the accused offered to prove statements made by third parties the same night of the murder, and not far from the place of murder. This was refused by the court. In *Crookham* v. *State*, 5 W. Va. 510, the accused was not allowed to prove that another person had made threats to kill Thurman (the person killed) just before the killing charged to have been done by the accused, and that immediately after the offense such other person left the country, and had not been heard of since. In *Bowen* v. *State*, 3 Tex. App. 623, the defendant offered to prove that one John W. Hardin had stated that he (Hardin) had killed the deceased, Haldeman, for whose killing defendant was being tried, and had acknowledged to defendant that he had done him a great wrong by accusing him (defendant) of killing Haldeman. This statement was not allowed to be proven. In *Peck* v. *State*, 86 Tenn. 267, 6 S. W. Rep. 389, the defense offered to prove that one Robert Woods had, after the killing of the person for whom the accused was being tried, admitted to witnesses that he (Woods) had done the shooting. This was rejected. See, also, to the same effect, *Rhea* v. *State*, 10 Yerg. 258; *Smith* v. *State*, 9 Ala. 990; *Com.* v. *Chabbock*, 1 Mass. 144; *State* v. *White*, 68 N. C. 158.

In some of these cases the persons who were alleged to have made the statements or admissions were shown to be alive, and within reach of process, and in none of them were these persons shown to be dead, although in some they were beyond the jurisdiction of the court; but, as the persons could not have been compelled to testify in regard to said admissions, and thus compelled to criminate themselves, we do not see that it was material that they were still alive. Their right of absolute silence would deprive the accused party of their testimony on the witness stand as effectually as if dead.

If we are to consider the question, not upon decisions, but by analogy to other rules of evidence in criminal cases, we think this statement of King must be rejected. The declarations which bear the closest resemblance to these statements of King are those known as "dying declarations." These declarations are hearsay, and are admitted with the uttermost caution. They are only competent in the trial for the killing of the person making them, and only then when made by him in a dying condition, and after the hope of recovery is gone. If courts are thus cautious in allowing this kind of hearsay, surely this court should not allow, in the absence of an adjudicated case, such hearsay as the statement of Williamson, stating what King told him in December in regard to the stealing of these registered letters, because King now is dead.

The supreme court, by Chief Justice MARSHALL, in discussing "hearsay," and its exclusion as evidence, said:

"That this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible."

The court, after stating the exceptions to the general rule excluding hearsay evidence, says:

"But if other cases standing on similar principles should arise, it may be doubted whether justice and the general policy of the law would warrant the creation of new exceptions. The danger of admitting hearsay evidence is sufficient to admonish courts of justice against lightly yielding to the introduction of fresh exceptions to an old and well-established rule, the value of which is felt and acknowledged by all." *Queen* v. *Hepburn*, 7 Cranch, 296.

The jury that tried the defendant was not taken from the city of Paducah, but from the surrounding counties, and seemed to be an exceedingly intelligent one, having neither prejudice nor bias against the defendant, or partiality or sympathy for him. The question of the guilt or innocence of the defendant was one depending upon how the jury determined upon the evidence; and although the court might, if one of the jury, come to a different conclusion, this is no reason for granting a new trial.

The other ground for a new trial is the discovery of evidence since the trial, which was not and could not have been discovered by reasonable diligence before. This is a statement of H. E. Thompson of what young Withrow told him as to the fact that he had seen this registered letter at the time Miss Henneberger said she saw it. This evidence would be only competent to contradict Withrow, had the proper foundation been laid; and is not sufficient ground for a new trial. Whart. Pl. & Pr. § 869; *State* v. *Williams*, 14 W. Va. 864; *Friedberg* v. *People*, 102 Ill. 165; *Partee* v. *State*, 67 Ga. 570; *Polser* v. *State*, 6 Tex. App. 512.

The affidavits of Miss Henneberger and Withrow, in which they make statements more favorable to the defendant upon a material point, requires the court should consider whether these *ex parte* statements enti-

tle the defendant to a new trial. In view of what Withrow stated and omitted to state on the trial, his present statement is quite a surprising one, and much more favorable to the defendant than given at the trial. Miss Henneberger's *ex parte* statement is also more favorable to the defendant than that given before the jury. This is, however, chiefly in the distinctness of the statement in the affidavit as compared with that made before the jury. I have a distinct recollection of what occurred in the trial when these witnesses were examined. Young Withrow seemed to be calm and collected, and answered questions coolly, promptly, intelligently, and I think was not cross-examined at all by the defendant's counsel. Miss Henneberger became much embarrassed and agitated during the examination, but seemed to answer questions intelligently, though with some degree of indistinctness as to the time of her backing the registered letter to Model. She was excused, and in the course of a half hour or more was recalled, at the instance of the defendant, and then asked about some matter about which she had not been examined before. She was calmer than when she left the witness stand. The court asked her a number of questions for the purpose of having her state to the jury more definitely her recollection about the registered letter which she had addressed to Model, Tenn. She was asked the time, and all the circumstances connected with the matter. She made a clearer and more distinct statement than she had previously given, but still not so distinct or in detail as given in the affidavit filed. But granting this, and that Mr. Withrow's affidavit is more favorable to the defendant than his testimony before the jury on the trial, and that, too, upon a most material fact, still I do not think this new evidence is a good ground for a new trial. If parties in criminal cases are allowed to get *ex parte* statements from witnesses who have testified upon their trial what they would then state if again put upon the witness stand in another trial, and thus obtain a new trial if such evidence be material, a precedent would be established which would open wide the door to fraud and perjury. I am compelled, therefore, to overrule the motion for a new trial.