TATE, Justice.
The defendant Ellender was convicted of aggravated criminal damage to property, La.R.S. 14:55, and sentenced to ten years’ imprisonment at hard labor.
We reverse. We find merit to the defendant’s Assignment of Error No. 5.
This assignment complains of the denial of a new trial, sought on the basis of the state’s introduction of perjured testimony greatly prejudicial to the accused in the jury’s determination of his innocence or guilt of the crime charged. The prejudicial impact of this perjured rebuttal testimony may best be evaluated in the light of the following detailed summary of the evidence in chief introduced by both sides.

*501
Evidence in Chief

The prosecution arises out of a violent incident of January 15,1976, during a labor dispute. The incident itself is undisputed and abhorrent: a heavy-equipment vehicle (a forklift) was driven into the premises of a construction site, occupied by at least two men firing weapons, and crashed into trailers, trucks, etc., causing the death of an individual in one of them. The forklift was followed into the plant by a group of 20-40 men, who smashed automobiles, slashed tires, and did other damage.
The issue of this prosecution is whether the accused Ellender, one of about 150-300 pickets assembled outside the gate, participated in or was a principal in the assault.
As the state concedes, except for the small band who did violence, most of the large number of pickets assembled outside the gates were gathered in a peaceful demonstration to protest the termination the day before of building and construction union contracts at the construction site. (Commencing with the day before the incident, the construction work was to be done by laborers signed on by “Local 102,” a multi-craft organization not affiliated with recognized labor units. It supplied workers to contractors who did not wish to contract with the building and construction unions of organized labor.)
On the day of the incident, the evidence shows, pickets from the various locals of the building and construction trades councils commenced arriving at about 6:00 a. m. These locals were of the various building-trades crafts: carpenters, electrical workers, operating engineers, painters, pipefit-ters and welders, etc. The pickets arrived pursuant to word of mouth or upon suggestion from the professional employees (business agents) of their respective locals. El-lender, a pipefitter, was among those then present.
The incident occurred at plant-opening time of 7:00 a. m. The forklift drove up the road and turned in through the plant gate. The state produced the testimony of several witnesses, members of locals other than El-lender’s, who had participated in planning the incident the previous evening. All of these witnesses admitted that Ellender did not participate in this preliminary planning, nor was he referred to in these previous discussions.
Prior to the appearance of the forklift, a bearded man had, according to the state’s witnesses, instructed the assembled pickets to follow equipment into the plant when it appeared. Some of the state witnesses testified that this bearded man had called for equipment operators earlier in the morning, following which they left the scene to get the forklift. One or two of the state witnesses testified that Ellender had participated in the trespass onto the plant-site, but the others had seen him only on the picket line prior to the incident.
Seven of the state witnesses identified the bearded man as the defendant Ellen-der — five positively, and two with some reservations. One of the state witnesses (Ryder) could not so identify Ellender, and one (Kerry) testified that the bearded man was not Ellender.
The defense witnesses, members of the picket line, testified that Ellender was present solely as a peaceful picket. Two of them had observed a bearded man giving directions; they testified that the bearded man was not Ellender. (The evidence shows that there were approximately 20-30 bearded men in the crowd.)
Ellender testified that he was present on the scene as a peaceful picket. He denied any advance knowledge of or participation in the violent invasion of the plant-site. He stated that he, like most of the peaceful pickets, left the scene in dismay after it.
Ellender’s testimony shows that he is a pipefitter, engaged in pipeline construction work, who has been active as a member of the pipefitter’s union and in building-construction trade-union activities. He was immediate past president of his local (an elected, non-professional position).
Ellender admitted that he had served upon approximately 50-60 building-construction picket lines, some of them as picket captain. He testified positively that he *502 had never been a picket captain when violence occurred.

Rebuttal Testimony

The state introduced the rebuttal testimony of John Jensen primarily to counter this testimony of entirely peaceful past picket activities on the part of the defendant Ellender.
Ellender’s guilty knowledge, criminal intent, as corroborated by past such systematic activities, La.R.S. 15:445, 446, was obviously a central issue of the prosecution. Was he, as he and his witnesses testified, just a member of the picket line indulging in a peaceful mass demonstration, as were most of the some 300 pickets there assembled? Or was he, on the contrary, a member of the small band of 6-10 conspirators who planned the violent incident prior to their appearance on the scene, and who incited some 20-40 of the assembled pickets to invade the plant-site premises?
The testimony of even some of the state witnesses is at least ambiguous on this central issue. If Ellender had never before engaged in violence, in his extensive history of union activity and picket-line (50-60 times) participation, then doubts arising from possibly mistaken identification or testimony might more readily be resolved in his favor. If on the contrary Ellender’s pro-union sympathies had induced him to commit hoodlum violence in the past, his present innocent explanation of his presence on the scene is far less plausible.
Because of the central importance of the issue to Ellender’s principal defense under all of the' evidence, we cannot accept the state’s contention that Jensen’s perjured testimony (to be recounted below) pertained merely to a collateral issue, not to the accused’s guilt or innocence. (The state so contends in urging that, for such reason, the trial court did not abuse its discretion in denying a new trial, despite the perjured rebuttal testimony.)
On rebuttal, Jensen testified: (1) that there was violence on a Boise Cascade incident at DeRidder, and that he had seen Ellender there on the picket line (although his testimony did not otherwise link Ellen-der to any violence); and (2), far more damaging, that on a Panama Williams pipeline construction job near Vinton in 1974, Jensen at Ellender’s instructions had gone to the construction site to tear up all the equipment, “every piece of equipment out there, where they can’t work and lay the line,” and that accordingly Jensen “tore up all the equipment along the line . everything we could get . . . get close to,” “about a million dollars worth of damage.” Tr. 723. He testified that Ellen-der had directed him to do so at a meeting at the pipefitters’ local’s hall.

Motion for a New Trial

In moving for a new trial, the defendant alleged that he had discovered since the trial new and material evidence not discoverable before or during the trial, attaching 21 affidavits, to the effect that: (a) the only union meeting held before or during the Panama Williams picketing for three days concerned peaceful picketing; (b) that only peaceful picketing occurred during this period, with no member of Ellender’s local participating in or knowing of any violence; and (c) that Jensen was not present at the meeting.
At an evidentiary hearing on the motion, eight witnesses so testified, with the state stipulating that an additional nine defense witnesses would so testify. The only state witness called at this hearing (held two months after the motion was filed) testified to the same effect.
The witnesses were uniform in testifying that the three days of peaceful picketing were without incident, except for one occasion when a pickup truck window was broken and another when a busload of entering workers were verbally harassed. Some of the witnesses had read newspaper reports of a pre-picketing incident when valve-grinding substances were poured into motors, idling the equipment; but all witnesses were uniform in their account that the picketing itself was generally peaceful and that there was no massive destruction of *503 property, such as had been described by Jensen as occurring consequent to non-peaceful picketing.
Thus, the uncontradicted evidence at the evidentiary hearing shows Jensen’s rebuttal testimony to be false, that there was massive property destruction in violent picketing of the Panama Williams’ construction job. The purpose of the rebuttal testimony, it is to be remembered, was solely to rebut the defendant Ellender’s testimony that he had served on some 50-60 picket lines without violent incident — and we have previously noted the central importance to Ellen-der’s defense in inferences to be drawn from such testimony on his behalf.
Under these circumstances — where not until rebuttal did the state introduce crucial testimony regarding an important issue, which turned out to be perjured — , the trial court abused its discretion in denying a new trial. The defense could not of right rebut this perjured testimony, La.C. Cr.P. art. 765(5), La.R.S. 15:282 (1966), nor (the testimony being perjured) could it reasonably anticipate such testimony so as to counter it prior to verdict, La.C.Cr.P. art. 854. More important, fundamental fairness, if not due process, is violated when the state secures a conviction partially based upon crucial testimony known to be perjured. See: Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 238 (1959); 4 Wharton’s Criminal Procedure, Section 597 (Torcia ed., 12th ed., 1976); cf., Annotation, 34 A.L.R.3d 16 (1970).
We do not mean to intimate that, at the time Jensen was called as a rebuttal witness, the state prosecutors knew that Jensen was going to testify falsely. However, the state knew of factors which tended to affect adversely his credibility;[1] while perhaps it was not required to verify the accuracy of Jensen’s crucial rebuttal testimony before introducing it, neither can it claim exculpation on the basis of innocent surprise when Jensen’s testimony turned out to be perjured. As stated in a similar context, fundamental fairness to an accused (i. e., due process) is offended “when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 238 (1959).

Decree

For the reasons assigned, therefore, we reverse the conviction and sentence, and we remand this case to the district court for a new trial in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS, J., dissent.

. Jensen was a principal participant in the incident, having driven the forklift which accomplished the heaviest damage. He had been permitted to plead guilty to the charge of aggravated criminal damage the day before the present trial. He was a principal state witness. However, he had previously been convicted of negligent homicide, forgery (twice), and theft. Following his arrest for the present incident, he had been in federal custody as a witness, drawing $800 monthly as expenses.