361 So.2d 858 (1978)
STATE of Louisiana
v.
Tracy Lee HUDSON.
No. 61385.
Supreme Court of Louisiana.
June 19, 1978.
Rehearing Denied August 31, 1978.
Charles E. McConnell, 26th Judicial Dist., Indigent Defender Bd., Springhill, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., Roland V. McKneely, Asst. Dist. Atty., Bossier City, for plaintiff-appellee.
DIXON, Justice.
Defendant Tracy Lee Hudson was indicted for the first degree murder of Wendell G. Craig, in violation of R.S. 14:30. A jury trial was conducted and on March 2, 1977 defendant was found guilty as charged. A motion for new trial was granted by the trial judge on the ground that there was no evidence to sustain a conviction. The State's application for writ of certiorari was denied on April 7, 1977. 344 So.2d 1 (La. 1977).
On retrial September 26-30, 1977 the jury returned a guilty verdict and recommended a sentence of life imprisonment without the benefit of probation, parole or suspension of sentence.
*859 The crime occurred in a Bossier City trailer park. Several people, acquainted because the men worked together, had gathered at the mobile home of the Yorks, near the one occupied by defendant and his wife. Some were loud and very drunk (including the victim). One member of the party (who, with his wife, were the only blacks involved) had parked very close to defendant's trailer, and was noisy and slow to leave. Defendant emerged from his mobile home, remonstrated and argued with the black who became distressed and drove off without the victim, who was depending on him for a ride home. The victim and the defendant then argued. The defendant testified that his wife suddenly terminated the argument by stabbing the victim. The defendant and his wife then withdrew to their mobile home. Defendant said the victim continued to make loud noises outside for awhile, but that it became quiet. The Yorks testified that the victim made his way back to their mobile home and fell dead on the floor.
On appeal, defendant relies upon three assignments of error for reversal of his conviction and sentence.

Assignment of Error No. 1
By this assignment, defendant contends that the trial court erred in failing to sustain his motion to suppress the testimony of a State witness, Dennis Plunkett, or in refusing to allow an evidentiary hearing in support of defendant's motion.
Defendant sought to exclude the testimony of the witness on the ground that the State had not acted with "clean hands." Defendant alleged in argument on the motion that he would attempt to show, by way of an evidentiary hearing, that the witness was served a subpoena by the sheriff's office, and that there was no subpoena or return on the subpoena filed in the record in the clerk's office. He argues that, although the identity of State witnesses is not normally discoverable (see, e. g., State v. Thornton, 351 So.2d 480 (La.1977)), as a practical matter, that information becomes available on the public record when subpoenas and returns on subpoenas are filed with the clerk of court. Plunkett was an important witness  the only one to testify that he had seen Tracy Hudson stab Craig. Plunkett had not testified at the first trial, although he said he had given his name to the investigating police. The prosecutor interviewed Plunkett for the first time a few weeks before the second trial.
Even if it could be shown that the State acted with impropriety (we find none), defendant has failed to show he was prejudiced by not discovering the witness' identity earlier. Defense counsel became aware of the State's intention to call Plunkett after the jury was chosen, and then indicated to the court he had been caught by surprise. The trial was recessed until the next morning, and the trial judge excused the other witnesses to give defense counsel an opportunity to interview Plunkett before the resumption of trial the next day. It is apparent that defendant had the opportunity to complete trial preparation before any witnesses were called.
There is no merit to this assignment.

Assignment of Error No. 2
Defendant contends the trial court erred in sustaining the State's objection to certain testimony of Ms. Sonya Peters, defendant's attorney, during the first trial.
At defendant's first trial, less than seven months earlier, he had been represented by two lawyers from Oklahoma. (Defendant was a horse trainer, had been a resident of Louisiana for only a short time, and had previously lived in Texas and Oklahoma). The Oklahoma lawyers associated Sonya Peters, a Shreveport lawyer, to assist them in the trial. According to defense counsel, Ms. Peters was prepared to testify that, in preparation for the first trial, she was told by one of the Oklahoma lawyers that Helen Hudson, defendant's wife, had said she was the one who stabbed Craig and that Helen Hudson admitted to Ms. Peters that she was, indeed, the one who stabbed Craig.
In State v. Gilmore, 332 So.2d 789 (La. 1976), we recognized that evidence that another *860 person had admitted doing the act for which defendant was on trial was not inadmissible even though it was hearsay (evidence of a statement made out of court, offered to show the truth of matters asserted therein; State v. Martin, 356 So.2d 1370 (La.1978)).
We recognized in the Gilmore case that such an extra-judicial statement admitting the commission of a crime fell within the exception to the hearsay rule as an admission against the defendant's penal interest. The source of credibility for the out-of-court admission is the assumption that a person normally would not admit the commission of a crime if it were not true.
If the person who is said to have made the prior admission is present as a witness against the defendant, he is subject to cross-examination on the matter of his prior admission; if he denies making it, evidence of his out-of-court declaration is admissible. R.S. 15:493. In such case, all the parties with knowledge are before the court, and the jury can make the factual finding based on testimony. Where, however, the person who is said to have made the prior confession is not before the court, the chance of fabrication of testimony that another has confessed increases, and its reliability diminishes. Where, however, the defendant has made known his belief that another has confessed, and has diligently sought the attendance of that person at trial to prove his admission, only to be thwarted by the death (State v. Gilmore, supra) of the witness, or by his refusal to incriminate himself (see, e. g., Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, 162 A.L.R. 437, 444 (1945); U. S. v. Mulholland, 50 F. 413 (D.C.1892); See also State v. Morrow, 260 La. 72, 78, 255 So.2d 78 (1971) (Summers, J., dissenting); cf. State v. May, 339 So.2d 764, 770 (La.1976)), indicia of the genuine character of the defense is present. The rule developed that, if the out-of-court declarant were "unavailable" as a witness, testimony that the missing person had made the admission against penal interest is admissible.
Here defendant never revealed that his wife had confessed until the trial itself. She had testified at the first trial, apparently to the effect that she was present and her husband did not stab the deceased. Defendant testified that he did not stab the victim. At his second trial, he explained the failure of his wife and himself to reveal her as the culprit by the assertion that no one asked either of them if his wife had done the act. The only evidence in the record about the whereabouts of Helen Hudson at the time of the second trial is the testimony of defendant, who said he had not seen or heard of or about his wife since she left the courtroom after the first trial seven months earlier. There is no evidence of any effort to locate her or to obtain her presence at trial.
Although defendant was an indigent at the time of the second trial, and represented by the indigent defender, it is hardly conceivable that the aid of law enforcement officials could not have been enlisted to locate one who confessed to stabbing another to death.
Wigmore explains that the purpose and reason of the hearsay rule is the key to the exceptions to it. 5 Wigmore on Evidence, § 1420 (Chadbourn rev. 1974). The hearsay rule is based upon its unreliability, and the first principle supporting exceptions to the hearsay rule, Wigmore says, is the "necessity" principle; that is, the witness whose out-of-court declaration is needed is dead or otherwise unavailable, making necessary the introduction of the hearsay testimony.
The record before us does not demonstrate that the first principle of the exceptions to the hearsay rule has been satisfied. The unavailability of Helen Hudson has not been demonstrated. The circumstances of her absence tend to show the unreliability of her purported admission that she stabbed Craig. We cannot conclude, from the absence of evidence about efforts to obtain the presence of Helen Hudson for trial, that defendant was relegated by necessity to the use of hearsay testimony.
Proof of Helen Hudson's unavailability was essential to bring the testimony *861 of Ms. Peters within the exception to the hearsay rule.
There is no merit to this assignment.

Assignment of Error No. 3
Defendant contends that the trial court erred in denying his motion for new trial which alleged that the verdict is contrary to the law and the evidence (C.Cr.P. 851(1)), and the interests of justice would be served by granting a new trial (C.Cr.P. 851(5)). Specifically, defendant raised the same allegation as in Assignment No. 1 (see that discussion above). In addition, he contended that the testimony of Dennis Plunkett, the only alleged eyewitness to the stabbing, was perjured and should be disregarded; therefore, he argues that there was no evidence upon which a verdict of guilty could have been based and a new trial should have been granted.
Several witnesses testified that they saw defendant arguing with the victim prior to the stabbing, but none, other than Plunkett, stated that they actually saw defendant stab Craig. Plunkett was not called to testify at defendant's first trial (the witness himself stated that he gave his name to a police officer as a witness "but my name got lost somewhere"). Plunkett testified that while he was visiting a friend, Michelle Davenport, who lived in the same trailer park where defendant lived and where the incident took place, he saw Lori Miramontz run over to the Davenport trailer and overheard her saying that two men were arguing and fighting. According to Plunkett, at that point he jumped a fence behind defendant's trailer and arrived on the scene in time to see the defendant stabbing Craig.
Defendant alleges that Plunkett's testimony varies to such an extent from that of Lori Miramontz and Joy Heath that he must have committed perjury on the stand and his testimony should be disregarded. The testimony is conflicting in certain regards; however, the conflict does not reach the extent that it must be concluded that Plunkett's testimony was perjured. Compare State v. Ellender, 354 So.2d 500 (La. 1978), where eight defense witnesses testified in direct conflict (and it was stipulated that nine more defense witnesses would so testify) to the testimony of a State witness which testimony was crucial to a determination of the defendant's guilt or innocence.
From Lori Miramontz' testimony on direct examination it appears that she and Joy Heath observed defendant and Craig arguing in front of a trailer owned by Mr. and Mrs. Russell York, left before anything further happened, returned to the York trailer where she saw the injured Mr. Craig, and ran to the Davenport trailer where she asked Michelle Davenport to call the police. She testified that she did not see Plunkett until she got to the Davenport trailer. The testimony became confused, however, in redirect when she stated she went to the Davenport trailer after "the argument" but did not specify that it was after Mr. Craig had been stabbed. Joy Heath's testimony was basically to the same effect and indicated that she and Lori did not go to the Davenport trailer to make a phone call until after the stabbing had occurred which was the first time she saw Plunkett.
In any event, defendant exploited the inconsistency in closing argument in an apparent attempt to convince the jury to disbelieve Plunkett's testimony. When a conflict in testimony arises as to a factual matter, such as this, the question of the credibility of the witnesses rests within the sound discretion of the trier of fact. That factual determination will not be disturbed on review unless clearly contrary to the evidence. See, e. g., State v. Cobbs, 350 So.2d 168 (La.1977); State v. McSpaddin, 341 So.2d 868 (La.1977); State v. Alexander, 328 So.2d 144 (La.1976).
This assignment is without merit.
The conviction and sentence are affirmed.