GAUDIN, Judge.
Peter Salatich, III was convicted of manslaughter in the 24th Judicial District Court. The jury vote was 10-2 and the defendant was sentenced to five years at hard labor with credit for time served.
Salatich contends that the trial judge erred (1) in denying the motion to suppress his confession and inculpatory statement and (2) in admitting into evidence preju-dicially gruesome photographs of the victim.
The third assigned error states that the evidence at trial was not sufficient to justify the guilty verdict.
A fourth assigned error argues that the five-year sentence was constitutionally excessive.
Finally, Salatich asks this Court to search for any and all errors patent on the face of the record.
Finding no serious merit in any of the four assignments of error and discovering no errors patent, we affirm appellant’s conviction and sentence. Salatich was convicted in May, 1988 of the July 29, 1986 fatal shooting of Mrs. Wilhelmine Salatich, his mother.
ASSIGNMENT NO. 1
Jefferson Parish deputy Craig Fa-mularo was the first policeman to arrive at the Salatich residence in Metairie, Louisiana, following the shooting. Appellant and his mother lived together. George Land-rum, the gardener, met Famularo and directed him to the rear of the home where Mrs. Salatich’s body was on the floor. Fa-mularo testified “... that approximately three seconds later Mr. Salatich walked up to me and stated we tyad an argument and I killed her.”
Famularo said that he did not ask Sala-tich to say anything and that he did not have time to advise him of Miranda rights, particularly the right to remain silent. Sa-latich testified that he doesn’t remember making any statement to Famularo. Before leaving the residence and going to the police station, Salatich’s rights were recited to him by Famularo; and appellant signed a written form waiving constitutional rights.
*19 At no time, Famularo said, did Salatich ask to see either his father, who is an attorney, or any other lawyer.
Spontaneous and voluntary statements not given as a result of police interrogation are admissible without constitutional warnings. See State v. Lane, 414 So.2d 1223 (La.1982). The trial judge’s determination of admissibility should not be disturbed on appeal unless unsupported by the evidence. See State v. Nuccio, 454 So.2d 93 (La.1984). Here the district judge accepted Famula-ro’s testimony as true. The record does not suggest any error.
The recorded (on tape) statement was taken by detective John Nowak, who testified that although Salatich was upset and withdrawn, he clearly understood all that was said to him and that his responses were fully rational. The cassette itself substantiates Nowak’s testimony; Sala-tich’s taped confession appears completely voluntary and is devoid of any request for an attorney.
We cannot say that the record does not support the trial judge’s findings regarding the recorded confession. Salatich was advised of and he waived his Miranda rights and there were no apparent threats or promises made by any police officer.
The state contends that even if the taped statement was error, the mistake was harmless under LSA-C.Cr.P. art. 921 as Salatich had already spontaneously admitted that he had shot his mother. While this argument has merit, we see no need to address it. A trial judge’s admissibility ruling is entitled to considerable weight. In State v. Vessell, 450 So.2d 938 (La.1984), the Supreme Court of Louisiana stated at page 943:
“This is not a situation where the State simply failed to call witnesses which were known and available to it who could perhaps have specifically rebutted the defendant’s allegations. Cf., State v. Simmons, 328 So.2d 149 (La.1976). On the contrary, it is the State’s position that the two officers who testified were the only officers present during the interrogation. The officers also testified that no violence was used to obtain the confession. We are faced, therefore, with contradictory testimony which calls for a determination of the credibility of the witnesses. The trial court obviously disbelieved the version presented by Ves-sell and found credible the testimony of Officers Cutrer and LeBlanc. Such a determination is within the sound discretion of the trial court and, like all questions of fact, is entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Bell, 395 So.2d 805 (La.1981); State v. Hudson, 361 So.2d 858 (La.1978); State v. Cobbs, 350 So.2d 168 (La.1977).
“A review of the testimony shows that the trial court’s findings of credibility and the finding of a knowing and voluntary confession based thereon are not contrary to the evidence.”
The evidence relating to Salatich’s confessions indicates that the trial judge’s findings were within his sound discretion and should not be overturned.
ASSIGNMENT NO. 2
Several photographs of the victim’s body were introduced into evidence over the defendant’s objection. While these photographs are not pretty, they do show the cause and manner of death and the location of wounds. The trial judge found that the relevance and probativity of the photographs outweighed any possible prejudice.
Our examination of the photographs is supportive of the trial judge. The photographs are not so gruesome as to overwhelm reason and to associate Salatich with the crime without sufficient evidence. See State v. Sterling, 377 So.2d 58 (La.1979).
ASSIGNMENT NO. 3
Citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), appellant says the evidence did not support a manslaughter conviction. Manslaughter, according to LSA-R.S. 14:31, is:
“A homicide which would be murder under either Article 30 (first degree mur *20 der) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the. offense was committed; or
“A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.”
Accepting as true the evidence most favorable to the prosecution, the record does justify the verdict. The state suggests that the evidence at the very, least supports the manslaughter conviction.
ASSIGNMENT NO. 4
Salatich contends that his five-year sentence was excessive while the state calls it extremely lenient. Appellant’s brief does not particularize any reason for the alleged excessiveness. Manslaughter’s maximum sentence is 21 years at hard labor.
In passing sentence, the trial judge said:
“... The Court presided over the jury trial at which Mr. Salatich was found guilty of manslaughter in the death of his mother.
“The Court also heard the testimony of the psychiatrist, the witnesses for the State, and the witnesses for Mr. Salatich. And has received letters from neighborhood people and friends of the family, as well as the pre-sentence investigation which was ordered by the Court and prepared by the Department of Corrections.
“The Court must follow certain guidelines set forth in article 894.1 of the Code of Criminal Procedure as regards meting out a sentencing. The guidelines tell the Court that it must consider the nature of the crime. There is no question that the nature of the crime is a heinous crime, that of matricide.
“The Court must consider the circumstances surrounding the crime. Circumstances were such that there was a lifelong history of psychological duress and problems. And the jury believed that the years of torment, if you will, finally erupted to where it was a matter of more of a manslaughter than second degree murder.
“The Court must also consider certain mitigating circumstances. I think the circumstances just alluded to certainly provide those mitigating circumstances.
“The Court also must consider whether or not there is a likelihood that the defendant would commit a crime again. This is his first offense. Likelihood of committing such a crime again, so experts declare, is slim to none. And that the provocation would no longer exist because the provocator no longer exists.
“The Court cannot condone, nor diminish the enormity of the crime. The Court is required by the guidelines enacted by the legislature, and as I say, set down in article 894.1 of the Code of Criminal Procedure of the State to be used to form the criteria for what the sentence should be.
“I have given a great deal of thought to this. I think the following sentence is a fair and just sentence under the circumstances.
“I now sentence you, Mr. Salatich, to five years at hard labor. And you will be given credit for time already served. The Court is going to ask that should you be transferred to a place other than Jefferson Parish Correctional Center, that you be placed in some kind of special setting whereby you can receive whatever mental treatment you require, whatever medications that are deemed necessary.
*21 “Indeed, if in fact because of great delays that often happen, often occur in transporting a State prisoner to the State facility, if as I say those delays result in you remaining for the duration of the sentence in the Jefferson Parish Correctional Center, the Court would likewise request that whatever treatments are available and able to be given, be administered to you.”
This assignment of error is without substance, as are the others.
AFFIRMED.