400 So.2d 587 (1981)
STATE of Louisiana
v.
Reginald SMITH.
No. 67764.
Supreme Court of Louisiana.
June 22, 1981.
*588 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Mamoulides, Dist. Atty., Robert B. Evans, Jr., Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Jack Quarles, Gretna, Philip Johnson, Metairie, of Indigent Defender Program, for defendant-appellant.
*589 DIXON, Chief Justice.
Reginald Smith was convicted of first degree murder, R.S. 14:30, and sentenced to death in conformity with C.Cr.P. 905 et seq. The jury based its recommendation of the death penalty upon its finding that the defendant had knowingly created a risk of death or great bodily harm to more than one person. C.Cr.P. 905.4(d). In this appeal defendant challenges both his conviction and sentence. We affirm the conviction, but remand the matter to the trial court for the development of additional facts relative to the appropriate penalty.
This murder occurred at approximately 1:45 a. m. on September 11, 1978. The victim, Conrad Saluto, and three companions had driven into the crowded parking lot of the Courtyard Lounge in Marrero. The lounge was located near Barataria Boulevard on the service road which runs parallel to the West Bank Expressway. According to the testimony adduced at trial, one of the victim's companions was parking his car in the parking lot, and the victim and his two other friends were standing near a parked car at the corner of the parking lot. As they were talking, they heard what sounded like gunshots coming from the service road area. They immediately began running away from the direction in which the shots were fired. The victim was shot once in the back, and died en route to the hospital. None of the victim's friends saw the assailant.
There was one eyewitness to the shooting. Mark Alley, who was driving on the West Bank Expressway, was stopping for a red light at Barataria when he heard a gunshot. He looked toward the source of the sound and saw a man with a gun standing in the service road facing the lounge parking lot. A second man was running toward Barataria on the service road. The man with the gun fired two additional shots in the direction of the parking lot, and the man running stopped and looked back toward the parking lot. The pair began running down Barataria across the West Bank Expressway directly in front of Alley's truck. At first Alley followed the pair to a food store parking lot. He abandoned his pursuit when he saw a sheriff's unit, which he followed to the hospital.
Later, in a pretrial photographic line-up Alley identified the man with the gun as Reginald Smith, and the man running as Liston Armand.
The district attorney tried to obtain indictments against both Smith and Armand. While Smith was indicted, the grand jury returned a "no true bill" against Armand.

Argument No. 1

(Assignments of Error Nos. 8, 9 and 10)
The only witness called by the defense was Doyle Mark, who had known both the defendant and Armand for several years. Mark attempted to relate a conversation he had had with Armand on the day of the murder. The state objected to the testimony as hearsay. Defense counsel argued that, because Armand confessed to Mark that he was the assailant, the statement was admissible as a declaration against penal interest. The trial judge ruled that the hearsay testimony was not admissible because Armand was available to testify.
Defendant assigns reversible error to the trial judge's ruling. He contends that the testimony should have been admitted as a declaration against penal interest, and further that the exclusion of Armand's confession denied defendant of his constitutional right to a fair trial. Neither of these contentions has merit.

Declaration Against Penal Interest
Although hearsay is generally inadmissible, R.S. 15:434, one of the exceptions to this rule is the declaration against penal interest. Fed.R.Evid. 804(b)(3); C. McCormick, Evidence § 278 (2d ed. 1972); 5 J. Wigmore, Evidence § 1476 (Chadbourn rev. 1974). The exception was recognized by this court in State v. Gilmore, 332 So.2d 789 (La.1976). In that case, the defendant sought to exculpate himself by proving that a man named Sparks had admitted committing the crime for which defendant had been charged. Sparks had been killed *590 shortly after making the confession and before defendant's trial. This court held that, because of the declarant's unavailability, and because there existed corroborating evidence of the statement's trustworthiness, the statement was admissible as a declaration against penal interest.
In State v. Hudson, 361 So.2d 858 (La. 1978), this court again dealt with a hearsay statement by an "unavailable" witness. The defendant in that case sought to prove that his wife had confessed to the crime for which he was charged. He claimed that she was unavailable because he did not know her whereabouts and had not seen her for seven months. However, the record contained no evidence that the defendant had been diligent in his efforts to locate his wife. He had not enlisted the aid of law enforcement officials, and he introduced no evidence of any attempt to locate her. This court held that defendant had not discharged his burden of showing that the declarant was unavailable. See Pugh and McClelland, Work of the Louisiana Appellate Courts for the 1978-1979 TermEvidence, 40 La.L.Rev. 779, 807 (1980).
In the instant case, defense counsel did not contend that Armand was unavailable as a witness, nor could he have made such a showing. Armand had been subpoenaed by both the state and the defense. At the time defense counsel sought to introduce this declaration against penal interest, Armand was sitting in the parish jail located across the street from the courthouse. For whatever reason, defense counsel chose not to call Armand as a witness, even though he was available. Because of Armand's availability, the trial judge properly excluded the proferred hearsay testimony.

Due Process Claim
Defendant further asserts that the trial judge's ruling deprived him of his constitutional right to a fair trial. Reliance is placed upon Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (per curiam). In that case the United States Supreme Court held that the defendant's constitutional right to a fair trial on the sentencing phase had been abridged by the exclusion of an accomplice's confession. However, the holding in Green was necessitated by the "unique circumstances" of that case. Green and an accomplice had raped the victim after abducting her. The victim was murdered, and both Green and his accomplice were convicted of her murder. There was no direct evidence indicating which of the two men had murdered the victim; however, the accomplice had told a close friend that he killed the victim by himself after sending Green out on an errand. This testimony was used at the accomplice's trial to impose the death penalty. At Green's trial, however, the testimony was excluded as inadmissible hearsay. The state argued to the jury at Green's sentencing hearing that, in the absence of evidence showing which of the two men had killed the victim, the jurors could assume that both men had participated in the murder.
The court emphasized that the same evidence excluded at Green's sentencing trial had formed the basis for the imposition of the death penalty at the accomplice's trial. For this reason, the court found that Green's constitutional right to a fair trial had been abridged. Such unique circumstances do not exist in the present case. Therefore, Green v. Georgia, supra, is not applicable.
These assignments of error lack merit.

Argument No. 2

(Supplemental Assignment of Error)
Defendant contends he was denied equal protection because no transfer hearing was held in juvenile court prior to the district court's assumption of jurisdiction over this case. Defendant, who was sixteen years old at the time of the offense, was charged with and convicted of a capital offense. The Louisiana Constitution exempts from juvenile procedures those persons fifteen years of age or older who are charged with capital offenses. La.Const. art. V, § 19. Therefore, no transfer proceeding is necessary; jurisdiction is in the district court. The equal protection argument *591 advanced by defendant was previously rejected by this court on stronger facts. State v. Sheppard, 371 So.2d 1135 (La.1979).
This assignment lacks merit.

Assignments of Error Neither Briefed Nor Argued
In Assignment of Error No. 1 defendant contests the denial of his motion to suppress Alley's in-court identification of the defendant. The motion contended that the in-court identification was tainted by a pretrial photographic line-up which was unduly suggestive. Additionally, defendant alleged that the witness was shown a photograph of the defendant prior to the pretrial photographic line-up. Neither of these allegations was substantiated by evidence adduced at the hearing on the motion to suppress. Therefore, the trial judge properly denied the motion. This assignment lacks merit.
Assignments Nos. 2 and 3 complain of the trial judge's refusal to sustain defense challenges for cause. Because defendant did not exhaust his preemptory challenges, he cannot complain of the trial judge's ruling. C.Cr.P. 800. These assignments lack merit.
Assignment No. 4 concerns a hypothetical question posed to an expert witness in serology. The witness had examined the victim's shirt and found the blood stains on it to be the same blood type as a sample taken from the victim's body. The shirt also contained a hole which had never been positively identified as a bullet hole. The prosecutor was allowed to ask the serology expert whether, assuming the hole to be a bullet hole, it would be consistent to find blood surrounding it. This question, while ostensibly assuming the hole to be a bullet hole, in fact was designed to allow the witness to speculate whether the hole was a bullet hole. The question should not have been allowed, since this expert was not qualified in ballistics. Nonetheless, no harm could possibly have occurred. Regardless of whether the victim's shirt contained a bullet hole, it was positively proved at trial that the victim's body contained a bullet hole. This assignment lacks merit.
By Assignment No. 5 the defendant contends that the trial judge admitted hearsay testimony when he allowed an officer to testify that he was advised of the shooting incident. The testimony was not hearsay, because it was not offered to prove the truth of matter asserted. Rather, the statement was non-hearsay because it was offered to explain why, having received this information, the officer began an investigation. State v. Turner, 392 So.2d 436 (La. 1980); State v. Bazile, 386 So.2d 349 (La. 1980). This assignment lacks merit.
In Assignment No. 6 the defendant contests the admissibility of an envelope containing a bullet allegedly taken from the victim's body. Defendant contends that, since one of the officers expressed doubt about the authenticity of a signature on the chain of custody, the bullet should not have been admitted. The law does not require that evidence as to custody eliminate all possibility that the evidence has been altered. Rather, the evidence is admissible if the custodial evidence establishes that it is probable that the object is the one connected with the case. State v. Mims, 330 So.2d 905 (La.1976). This assignment lacks merit.
Assignment No. 7 concerns the trial judge's ruling that photographs of the scene of the murder taken two weeks before trial were not admissible because they did not accurately depict the scene as it existed at the time of the killing. Inasmuch as new construction had occurred in the area since the time of the murder, the trial judge properly sustained the state's objection to the admissibility of the photographs. This assignment lacks merit.
By Assignment No. 11 the defendant contends that the prosecutor in closing argument made a statement of fact not in evidence. The record reveals that the fact was in evidence, and therefore the objection was properly overruled. This assignment lacks merit.
Assignment of Error No. 12 concerns the denial of defendant's motion for new trial. In that motion defendant asserted that the verdict was contrary to the law *592 and evidence particularly since there were no witnesses who actually saw the defendant shoot the victim. The trial judge properly denied defendant's motion. The circumstantial evidence adduced against defendant, especially the testimony of Alley, was sufficient to exclude every reasonable hypothesis of innocence. R.S. 15:438. This assignment lacks merit.
Because none of the assignments of error has merit, the conviction is affirmed.

Sentence Review
The legislature has directed this court to "review every sentence of death to determine if it is excessive," and to "establish such procedures as are necessary to satisfy constitutional criteria for review." C.Cr.P. 905.9. In response to this legislative mandate, Supreme Court Rule 28[1] was promulgated.
Section 1 of that rule identifies the three components of this court's excessiveness review. Before this court will affirm a sentence of death, three determinations must be made: (1) that the sentence was not "imposed under the influence of passion, prejudice, or any other arbitrary factor;" (2) that "the evidence supports the jury's *593 finding of a statutory aggravating circumstance;" and (3) that the sentence is proportionate "to the penalty imposed in similar cases, considering both the crime and the defendant." Section 5 states: "The court may remand the matter for the development of facts relating to whether the sentence is excessive."
Scrupulous appellate review is constitutionally required in death cases. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). See Dix, Appellate Review of the Decision to Impose Death, 68 Geo.L.J. 97 (1979). To discharge that responsibility, this court does not confine itself to the evidence adduced at trial. Rather, the additional information furnished pursuant to Rule 28 is considered. Before this court will affirm the imposition of the death penalty, all the information before us must be convincing that death would not be an excessive punishment.
In recommending death, the jury found one "aggravating circumstance." The jury found that the state had proved beyond a reasonable doubt that the defendant knowingly created a risk of death or great bodily harm to more than one person. C.Cr.P. 905.4(d). The jury apparently was convinced beyond a reasonable doubt that, when the defendant fired the shots, he knew that the victim and at least one other person were in danger of great bodily harm.
The trial evidence supports such a conclusion. The victim's companion testified that, at the time defendant began firing, the victim and two of his friends were standing close together near a parked car in the lounge parking lot. There is nothing in the trial transcript which indicates that the victim had either left the group of boys or provoked the defendant in any way. The trial transcript supports a finding that the defendant randomly shot at a group of boys whom he had never before seen.
Contained in the information furnished us is a report of a sentence investigation conducted by the Department of Corrections pursuant to a request therefor by the trial judge. That investigation report includes synopses of interviews conducted by a probation and parole agent. There are discrepancies in the facts revealed by these statements and the facts as they emerge from the trial transcript. None of those interviewed for the sentence investigation report (whose statements are described hereafter) was called as a witness at trial.
The discrepancies concern two issues of fact: (1) whether the victim left the group of boys prior to the murder; and (2) whether any verbal encounters occurred between the victim and his companions and the defendant and his companion, Armand.
According to the sentence investigation report, Officer John Fortunato was one of the officers who arrived at the scene shortly after the murder had occurred. He was apparently informed that the victim and his companions had exchanged words with the two male Negro youths standing in the service road. According to Fortunato's statement in the sentence investigation report, he was told that, when the victim got out of his companion's vehicle, he began walking toward the service road in the direction of the Negro youths. It was at this time that one of the Negro youths began firing in the victim's direction.
Lindsey Grabert, another of the victim's friends present when the murder occurred, was interviewed by the probation and parole officer. The report states that Grabert had made a statement to the police shortly after the murder to the effect that the victim was seen walking toward the two Negro youths standing in the service road. When interviewed by the probation and parole agent, Grabert denied having made this statement.
The probation and parole agent also interviewed the defendant. Although Smith denied having committed the murder, he stated that one of the white youths had thrown a beer bottle at him and Armand, and had then left their vehicle armed with a jack handle. According to defendant's companion Armand, none of the white youths threw anything or was armed, but one of them did curse at the defendant and Armand.
*594 As mentioned earlier, none of these persons interviewed by the probation and parole agent was called as a witness at trial. Nonetheless, when their statements are viewed in a light most favorable to the defendant, their stories disclose a possibility that, when the defendant fired the shots, he intended to shoot only the victim, and that the victim might have been far enough away from his companions that they were not in any real danger of bodily harm.
To resolve the apparent discrepancy, one possible course for this court is to vacate the sentence and remand for resentencing. This option, while a possibility, is premature at this time, because the statements contained in the sentence investigation report are unsworn accounts given to a probation and parole agent. This court is not presently in a position to declare that these individuals should have been called as witnesses. Yet, a remand for a new sentencing hearing is unnecessary unless such a determination is made. Implementing this alternative at the present time would amount to second-guessing trial counsel, when we are not presently in a position to determine whether failure to call these individuals as witnesses was error or the result of trial strategy and professional judgment.
Therefore, Section 5 of Rule 28 should be invoked, and the case remanded to the trial judge for the development of additional facts. The trial judge who heard the case is in the best position to evaluate the sworn testimony of those individuals whose statements appear to cast doubt on the version of facts presented at trial. Should he determine that their testimony creates reasonable doubt regarding the existence of the aggravating circumstances relevant to this case, then a new sentencing hearing should be held. Should he determine that the accounts in the sentence investigation report are lacking credibility or are otherwise without merit, then this court will be in a position to concur in the jury's finding of the aggravating circumstance.
The procedure adopted today is analogous to a hearing conducted pursuant to a defendant's motion for a new trial on the basis of newly discovered evidence. In that situation, the trial judge determines the credibility of the witnesses called on the defendant's behalf. Of course, in the instant situation, no motions have been filed on the defendant's behalf, and this court has decided on its own to remand for the determination of additional facts. This procedure is necessitated by the unique severity of the penalty involved in this case and by the fact that the jury's determination to impose death is based upon a single aggravating circumstance.
For the reasons assigned, the cause is remanded to the trial judge for a hearing and determination consistent with the views expressed herein. If the additional testimony is found to cast doubt on the existence of the aggravating circumstances of this homicide, a new sentencing hearing should be granted by the trial judge; if his finding is adverse to the defendant, the right of defendant to appeal that finding is reserved to him.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I concur in the court's decree only because the court does not affirm the death penalty and because the court has not completed its excessiveness review but has left that determination for another day. See Rule 28, § 1, Supreme Court Rules.
Although the majority finds that the record evidence supports the finding of an aggravating circumstance, I have serious reservations whether a reasonable trier of fact could have found it proven beyond a reasonable doubt that the offender knowingly created a risk of death or great bodily harm to more than one person. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The record does not demonstrate with certainty that Smith randomly shot into a group of people, exposing several to risks of death or great bodily harm. The witnesses who testified to the relative locations of the people present during the shooting referred to chalk marks on a blackboard sketch of the murder scene. *595 The chalk board drawing was not preserved for our review. Without it the crucial testimony regarding the proximity of other persons to the victim, the line of evaluation of fire is meaningless. We cannot properly perform our constitutional duty of capital sentence review in the absence of a complete record of all of the material evidence presented to the sentencing jury. See Rule 28, § 2, Supreme Court Rules; La.C.Cr.P. art. 845.
Nevertheless, on remand the trial judge is not limited to considering whether reasonable doubt regarding the existence of the aggravating circumstance exists. Though section 5 of Supreme Court Rule 28 gives this court the power to remand for the development of facts relating to whether the sentence is excessive, the trial court is empowered to order a new trial if error occurred during the sentencing hearing that necessitates the granting of a new trial. La.C.Cr.P. art. 905.1(B).
The majority has determined that this court may, under section 5 of Rule 28, remand for a proceeding in the nature of a hearing on a motion for a new trial. Since the procedure is the same as for trial insofar as applicable, La.C.Cr.P. art. 905.2, the defendant should be permitted to join in the proceeding and the trial judge should order a new sentencing hearing if any of the grounds for a new trial exist. La.C.Cr.P. art. 851.
In addition to the grounds suggested by the majority opinion, I believe that the trial judge should grant a new trial on the death penalty if he is of the opinion that the ends of justice would be served by granting a new sentencing hearing. See La.C.Cr.P. art. 851(5). The record in this case raises several grave questions as to whether the defendant received a fair penalty hearing. For example, the record reflects serious cause to doubt whether defendant received the competent assistance of an attorney acting as a conscientious advocate for his life. State v. Myles, 389 So.2d 12, 30 (La. 1980).
In my opinion, the defendant did not receive the effective assistance of counsel to which he was entitled under the constitution. After the jury returned a guilty verdict in the guilt portion of the trial, the trial judge briefly explained to the jury the scope of the sentencing hearing. The prosecuting attorney then delivered a brief statement telling the jury that it would rely entirely on its case presented at the guilt phase of the trial and would introduce no other evidence. The defense attorney then addressed the jury with the following statement:
"With reference to aggravating circumstances, the Court will also instruct you as to mitigating circumstances. Part of the mitigating circumstances, as the Court will instruct you, is the age of the defendant, his prior criminal record, the absence of a prior criminal record. Those are some of the mitigating circumstances that you must consider.
"By looking at the defendant, he is a person of youth, not a hardened criminal of older age. The State has not introduced any evidence of any prior record of the defendant and also in this hearing, the defense can call a witness to testify about the defendant as far as your considering the mitigating circumstances and since the State has rested on prior evidence submitted, I'd like to call Mr. Alvin Smith to the stand."
This was the only statement that defense counsel made to the jury during the sentencing phase of the trial. He made no closing argument whatsoever.
Smith's father was the only witness called during the sentencing hearing. He testified that he knew of no prior convictions of his son, that his son was sixteen years old at the time of the crime, and that his son regularly attended church on Sundays.
It is difficult to imagine circumstances under which a defense attorney may render effective assistance in a death penalty proceeding by waiving closing argument. When he rests his client's case with little or no evidence, moreover, it is imperative that defense counsel advocate his client's cause in closing argument. State v. Myles, supra. *596 He should argue that the aggravating circumstance relied on by the state has not been proven beyond a reasonable doubt whenever there is a genuine question of the state's proof as in the present case. He should ask the jury to spare defendant's life, and urge the jurors to be mindful of their awesome responsibility. He should not mechanically submit the defendant's fate to the decision-making process with no attempt to influence it. State v. Myles, supra.
I respectfully concur.
NOTES
[1] "Section 1. Review Guidelines. Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:

(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Section 2. Transcript, Record. Whenever the death penalty is imposed a verbatim transcript of the sentencing hearing, along with the record required on appeal, if any, shall be transmitted to the court within the time and in the form, insofar as applicable, for transmitting the record for appeal.
Section 3. Uniform Capital Sentence Report; Sentence Investigation Report.
(a) Whenever the death penalty is imposed, the trial judge shall expeditiously complete and file in the record a Uniform Capital Sentence Report (see Appendix `B'). The trial court may call upon the district attorney, defense counsel and the department of probation and parole of the Department of Corrections to provide any information needed to complete the report.
(b) The trial judge shall cause a sentence investigation to be conducted and the report to be attached to the uniform capital sentence report. The investigation shall inquire into the defendant's prior delinquent and criminal activity, family situation and background, education, economic and employment status, and any other relevant matters concerning the defendant. This report shall be sealed, except as provided below.
(c) Defense counsel and the district attorney shall be furnished a copy of the completed Capital Sentence Report and of the sentence investigation report, and shall be afforded seven days to file a written opposition to their factual contents. If the opposition shows sufficient grounds, the court shall conduct a contradictory hearing to resolve any substantial factual issues raised by the reports. In all cases, the opposition, if any, shall be attached to the reports.
(d) The preparation and lodging of the record for appeal shall not be delayed pending completion of the Uniform Capital Sentence Report.
Section 4. Sentence Review Memoranda; Form; Time for Filing.
(a) In addition to the briefs required on the appeal of the guilt-determination trial, the district attorney and the defendant shall file sentence review memoranda addressed to the propriety of the sentence. The form shall conform, insofar as applicable, to that required for briefs.
(b) The district attorney shall file the memorandum on behalf of the state within the time provided for the defendant to file his brief on the appeal. The memorandum shall include:
i. a list of each first degree murder case in the district in which sentence was imposed after January 1, 1976. The list shall include the docket number, caption, crime convicted, sentence actually imposed and a synopsis of the facts in the record concerning the crime and the defendant.
ii. a synopsis of the facts in the record concerning the crime and the defendant in the instant case.
iii. any other matter relating to the guidelines in Section 1.
(c) Defense counsel shall file a memorandum on behalf of the defendant within the time for the state to file its brief on the appeal. The memorandum shall address itself to the state's memorandum and any other matter relative to the guidelines in Section 1.
Section 5. Remand for Expansion of the Record. The court may remand the matter for the development of facts relating to whether the sentence is excessive." Supreme Court Rule 28.