480 So.2d 721 (1985)
STATE of Louisiana
v.
Thomas WILLIAMS.
No. 84-KA-0322.
Supreme Court of Louisiana.
May 14, 1985.
*722 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Leon Cannizzaro, James Letten, Joanne C. Marier, Asst. Dist. Attys., for plaintiff-appellee.
Dwight Doskey, Pamela Moran, New Orleans, for defendant-appellant.
LEMMON, Justice.
In this appeal from a conviction of first degree murder and a sentence of death, the principal issue is whether the evidence was sufficient to prove both that (1) defendant acted with a "specific intent to kill ... more than one person" (one of the aggravating elements in La.R.S. 14:30's definition of first degree murder which must be proved in the guilt phase) and that (2) defendant "knowingly created a risk of death... to more than one person" (one of the statutory aggravating circumstances listed in La.C.C.P. Art. 905.4 which must be proved in the penalty phase). A second issue involves the frequently occurring problem of ineffective assistance of counsel in the penalty phase of the bifurcated capital trial.

Facts
The incident at issue occurred on January 16, 1981 in a neighborhood barroom near defendant's home. Upon entering the bar, defendant immediately demonstrated that he was in a hostile mood. He made unprovoked statements that he was "tired of people messing over him". He commented to the manager that he (the manager) was going to need to use a baseball bat which the manager kept behind the bar to control unruly customers.
The group at the bar initially ignored defendant. Finally, Carl Carter, hoping to placate defendant, called defendant by name and told him that no one meant him any ill will. Carter then picked up the manager's camera and told defendant he wanted to take his picture. Defendant pulled a pistol from his jacket and said, "That'll be the last picture you shoot." With that, defendant shot and killed Carter with a single bullet. Immediately after shooting Carter, defendant turned the weapon on the other horrified patrons and fired at two men standing at the end of the bar, but missed them. Defendant then fired at the owner near the other end of the bar, shouting, "You won't get out the back door." The bullet struck the owner in the arm. Defendant also fired at another patron, barely missing his head.
When defendant fled from the bar, the owner armed himself and chased defendant into the street, where the two exchanged shots. Defendant escaped and returned to his residence, where he was arrested by the police minutes later with the revolver in his waistband.
When defendant was at the police station, he saw the owner of the bar and called out, "I missed you that time, but I'll get you next time."
The grand jury indicted defendant for first degree murder on the basis that he killed a human being "when the [defendant] ha[d] a specific intent to kill or inflict great bodily harm on more than one person".[1] La.R.S. 14:30(3). At the penalty *723 stage, the state relied on the aggravating circumstance that defendant "knowingly created a risk of death or great bodily harm to more than one person". La.C. Cr.P. Art. 905.4(d). The jury found defendant guilty as charged and recommended the death penalty, finding that the aggravating circumstance had been proved beyond a reasonable doubt.

Sufficiency of the Evidence
The present Louisiana capital sentencing procedure, enacted in 1976, adopted the significant features of the Georgia statute which had been approved in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The statute requires a separate sentencing hearing after a verdict of guilty of first degree murder (which in 1976, was defined as any specifically intended killing). The hearing focuses on the circumstances of the offense and the character and propensities of the offender. After the hearing, the jury, in order to recommend the sentence of death, (1) must find beyond a reasonable doubt the existence of at least one of the aggravating circumstances listed in the statute and (2) must, after considering any mitigating circumstances, unanimously agree on the appropriateness of capital punishment. When the jury recommends the death sentence, there is an automatic appeal to this court, which must determine (among other things) that the jury's finding of at least one statutory aggravating circumstance is supported by the evidence.
Prior to Gregg, The United States Supreme Court had held that the death penalty is not appropriate punishment for all killings.[2]Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The aggravating and mitigating circumstances in the Georgia statute were designed to provide standards for guiding the jury's discretion in choosing between those murderers who should be sentenced to death and those who should be sentenced to life imprisonment. Gregg v. Georgia, above. Thus, the aggravating circumstances included in the Louisiana statute enacted in 1976 represented a legislative attempt to define the most serious situations under which murders are committed and the most serious propensities of an offender which indicate the likelihood that he will commit similar crimes in the future.[3] The cases construing the statutory aggravating circumstances have therefore turned primarily on questions of legislative intent.
The statutory aggravating circumstance at issue in this case was first construed by this court in State v. English, 367 So.2d 815 (La.1979). The evidence established that defendant intended to kill three kidnapped persons by shooting each one individually at short range, but that two of the intended victims escaped. This court considered, but rejected, the argument that the aggravating circumstance contemplated only a single act (such as exploding a bomb in a crowd) which killed one person and at the same time created the risk of death or great bodily harm to at least one more person. This court concluded that the more likely intention of the Legislature was to include the risk of multiple deaths (or great harm) created by a "single consecutive course of conduct" in which at *724 least one person was killed.[4] The court further noted that such a construction provides sufficient objective guidelines to guard against arbitrary and capricious infliction of the death penalty.
In State v. Martin, 376 So.2d 300 (La. 1979), the defendant, after shooting the intended victim, immediately turned his weapon on three others who were in the same room of the house trailer and shot them to death. Determining that "the evidence is sufficient to support the conclusion that the defendant murdered the victims one after the other as a part of a single consecutive course of conduct", the majority concluded that "the act of the defendant is within the interpretation of the statutory aggravating circumstance". The dissenting opinion expressed a preference for the "distinct act" interpretation, noting that defendant only planned to kill the primary victim (who was having an affair with his wife) and that the evidence did not support a finding that defendant at the time of the first killing had formed an intent to kill the other occupants.
In State v. Sonnier, 402 So.2d 650 (La. 1981), defendant shot and killed two victims, who were lying side by side, with six rapid rifle shots. The unanimous decision held that "this aggravating circumstance is established when the defendant by a single and consecutive course of conduct contemplates and causes a great risk to more than one person".[5]
In State v. Monroe, 397 So.2d 1258 (La. 1981), the defendant entered the victim's apartment at night. After stabbing the victim to death, defendant also stabbed the victim's daughter in the back and told her he was going to kill her, but she escaped and survived. The court held that "this aggravating circumstance is established when the defendant by a single and consecutive course of conduct contemplates and causes a great risk to more than one person".
In 1979, the Legislature amended La.R.S. 14:30 to add the requirement of an aggravating element as an essential element of first degree murder, which had previously been defined as any specifically intended killing.[6] Thus, the Legislature incorporated the discretion-channeling function of aggravating circumstances into the definition of first degree murder, thereby requiring the finding of an aggravating element in the guilt phase of the trial before the offender could even be subjected to a penalty hearing. However, the language of the "more than one person" aggravating element in La.R.S. 14:30(3) was different from the language of the parallel aggravating circumstance in La.C.Cr.P. Art. 905.4(d).[7]
In State v. Glass, 455 So.2d 659 (La. 1984), and State v. Wingo, 457 So.2d 1159 (La.1984), two separate cases involving the same crime, defendants broke into the home of a middle-aged couple, bound and *725 robbed them, and then shot them to death one after another. The court repeated the language utilized in Sonnier and Monroe with regard to the proof of the pertinent aggravating circumstance in the penalty phase. However, the sufficiency of the evidence as to the parallel aggravating element in the guilt phase was not raised by the defendant or discussed by the court.
In State v. Welcome, 458 So.2d 1235 (La.1984), the defendant was involved in a confrontation with his aunt and her friend. After defendant shot and killed the friend, he reloaded his weapon, chased his aunt down the street, and fired five shots into her as she begged for mercy. The court reviewed the statutory construction adopted in English and pointed out that this construction has been applied in subsequent cases. The court then concluded:
"These decisions indicate that one of two factors must be present to satisfy the requirements for the aggravating circumstance: Either a single act of homicide by an offender must create a genuine risk of death or great bodily injury to more than one person, such as the risk created by the explosion of a bomb in a crowded building; or, a single consecutive course of conduct by the offender must contemplate and actually cause the death of one person and the death or great bodily harm of another, such as slaying of four persons in close proximity and in rapid succession inside a house trailer."[8]
The court in Welcome concluded unanimously that defendant's actions in that case were sufficiently connected in time and place to constitute a "single episode" so that "it was reasonable for the jury to find beyond a reasonable doubt that defendant contemplated and caused the death of two victims in a single consecutive course of conduct". Again, the issue of the sufficiency of proof in the guilt phase of the "more than one person" aggravating element was not raised on appeal or discussed by the court, although this was the only aggravating element supporting the conviction.
The court considered the statutory construction of La.R.S. 14:30(3) for the first time in State v. Andrews, 452 So.2d 687 (La.1984). In that case, after a barroom fight with two brothers, defendant left and obtained a gun. He returned and searched for the brothers with the expressed intention of killing both. Upon seeing one brother, defendant pursued him with the gun, but the man escaped. Continuing the search, defendant located the second brother and shot him on sight, killing him. He then searched unsuccessfully for the other brother. When he was arrested, defendant admitted that he intended to "get" both men.
The sufficiency of the evidence supporting the "risk ... to more than one person" aggravating circumstance was not at issue on appeal, because the jury had recommended life imprisonment after the penalty hearing. However, this court set aside the first degree murder conviction because of insufficient evidence in the guilt phase that defendant, "as he was shooting Patrick, simultaneously harbored a specific intent to kill Joel".[9] In its reasoning, the court relied on the definition of specific intent. The court pointed out that specific intent requires proof that the offender "actively desired the proscribed consequences to follow his act". (Emphasis in original) La. R.S. 14:10(1). The court concluded that "no rational trier of fact could have concluded beyond a reasonable doubt that Andrews, by firing at Patrick, actively intended to kill both Patrick and Joel". (Emphasis in original) Thus, while the decision could have turned on whether there was a reasonable doubt as to defendant's intent to kill two at the time of the actual killing of one or on whether the time and distance involved in the chase disqualified defendant's acts as a "single consecutive course *726 of conduct", the court used language which could be interpreted as construing La.R.S. 14:30(3) to require a single act and rejecting the English interpretation of the parallel aggravating circumstance.[10]
In State v. Stewart, 458 So.2d 1289 (La. 1984), the defendant armed himself after quarreling with the woman with whom he was living. While defendant was restrained by the woman's son and sister, the woman ran outside and hid under the house. The sister then ran outside, whereupon defendant shot and killed the son. Defendant then went outside and discovered the sister trying to get into a car. He shot her in the chest, but she survived and testified against him. The jury found defendant guilty of first degree murder, but did not return the death penalty.
This court reversed the conviction of first degree murder. The plurality opinion stated that "no rational trier of fact could have concluded beyond a reasonable doubt that [defendant], by firing at [victim] inside the house or by any other act inseparable from the killing of [victim], actively desired as a result to kill or inflict great bodily harm to more than one person". 458 So.2d at 1291. (Emphasis added) The plurality thus did not construe La.R.S. 14:30(3) to apply only to a situation involving a single act by which the defendant killed one person while having an active desire to kill others as a result of the act.[11] While rejecting the theory that an intent to kill in a future and entirely separate criminal act would suffice to establish a "specific intent to kill ... more than one person", the opinion stated that specific intent to kill through an "act inseparable" from the initial act of homicide would suffice.
In the present case, the defendant was convicted of first degree murder solely on the basis of La.R.S. 14:30(3) and was sentenced to death solely on the basis of La.C. Cr.P. Art. 905.4(d). On appeal, defendant has raised the issue of sufficiency of evidence in both the guilt and penalty phases. This case therefore presents the first opportunity for this court to determine whether the aggravating element in La. R.S. 14:30(3) and the aggravating circumstance in La.C.Cr.P. Art. 905.4(d) should be construed similarly, despite the difference in statutory language.
As to La.C.Cr.P. Art. 905.4(d), we reaffirm the English construction of the statutory aggravating circumstance that the Legislature intended to classify among the most serious murders those in which the murderer specifically intended to kill more than one person and actually caused the death of one person and the risk of death or great bodily harm to at least one other person, all by a single act or by a series of acts in a single consecutive course of conduct. We further conclude that such a murder also falls within the definition of first degree murder stated in La.R.S. 14:30(3).
It is logical to construe those statutes in a parallel fashion. Although one statute involves the definition of a crime and the other involves the standards for jury discretion in sentencing, both serve the function of distinguishing between those murderers *727 who may be sentenced to death from those who may be sentenced to life imprisonment without parole. Moreover, both statutes reflect the same legislative intent to provide the most severe sentencing exposure to those murderers who formed an intent to commit multiple killings and who did in fact create the risk of multiple deaths through a single act or a closely related series of acts that resulted in at least one death. Finally, both statutes provide sufficient objective guidelines to guard against the arbitrary infliction of capital punishment.
Viewed in light of the foregoing principles, the evidence presented in this case clearly supports a conclusion that defendant specifically intended to kill more than one person and actually caused the death of one person and the risk of great bodily harm to another by a series of acts in a single consecutive course of conduct. Therefore, the jury's findings of the "aggravating element" required for its verdict of first degree murder and of the "aggravating circumstance" required for its death sentence recommendation are supported by the evidence.

Capital Sentence Review
Supreme Court Rule XXVIII requires this court to review every death sentence to determine the following:
"(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
"(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
"(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
As noted in the foregoing discussion, the evidence was sufficient to support the jury's finding of the statutory aggravating circumstance listed in La.C.Cr.P. Art. 905.4(d). Furthermore, the record of the penalty hearing does not indicate that the jury was presented with any evidence or argument which injected an arbitrary factor into the jury's deliberation process.
Nevertheless, as in State v. Fuller, 454 So.2d 119 (La.1984), we are hampered in our excessiveness review of the death sentence by the fact that defense counsel did not offer any evidence in mitigation at the penalty hearing. Counsel relied on the evidence presented in the guilt phase and simply reurged his argument that defendant was intoxicated at the time of the shooting. Accordingly, we are again faced with a case in which defense counsel (who was a different attorney from defendant's present attorney in this appeal), after presenting an unsuccessful but rather thorough defense in the guilt phase, did little in the penalty phase. See State v. Myles, 389 So.2d 12 (La.1979); State v. Berry, 430 So.2d 1005 (La. 1983); State v. Fuller, above.
Because of this consideration, we are disinclined at this stage either to affirm or reverse defendant's death sentence on this record. We cannot, for example, determine on the present record whether counsel's decision not to present evidence in mitigation was a choice dictated following consultation with defendant or was a tactical decision of counsel that such action was the best means of prevailing at the sentencing hearing. Nor can we determine the existence, character and weight of mitigating evidence that might have been available. Additional factual development would be helpful to the determination of the excessiveness of the sentence.
In State v. Smith, 400 So.2d 587 (La. 1981), and State v. Fuller, above, we affirmed defendant's convictions, but remanded to the trial court under Supreme Court Rule XXVIII § 5 for development of additional facts and for an initial determination by the trial court of the necessity of a new penalty hearing.[12] The motive underlying the remands in both Smith and Fuller was the avoidance of a future postconviction *728 application challenging the effectiveness of counsel based on the failure to present allegedly available evidence.[13] As noted earlier, whether additional evidence in mitigation was available or whether a reasonable tactical choice was made to forego offering evidence and to rely on the guilt trial record is at this point purely a matter of speculation. A promptly conducted hearing is the most expeditious means of making such a determination.[14]
After the hearing on remand in this case, the trial judge should determine whether defendant received effective assistance of counsel, despite his attorney's failure to offer evidence in mitigation. See State v. Myles, above; State v. Berry, above. See also Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Since defendant's trial counsel may be called to testify as a witness, a new attorney must be appointed to represent defendant at the hearing on remand.[15] If the trial court concludes that a new penalty hearing is required, the trial court should order a new penalty hearing. If the trial court denies relief, defendant may again appeal to this court for review of that decision.
Accordingly, defendant's conviction of first degree murder is affirmed, but determination of the excessiveness of his death sentence is pretermitted, and the case is remanded to the trial court for an evidentiary hearing on the effectiveness of counsel, after which the trial court shall decide whether the evidence requires that the sentence be vacated and a new penalty hearing be granted. If the death sentence is not set aside on remand, defendant may again appeal his sentence.
DIXON, C.J., and CALOGERO, J., concur.
DENNIS, J., concurs with reasons.
NOTES
[1] Defendant attacked the sufficiency of the indictment which charged in pertinent part:

"[O]n the sixteenth day of January ... [1981]... committed first degree murder of one CArl Carter, while attempting to kill more than one person...."
The indictment contains the required allegations of the "short form" indictment provided in La.C.Cr.P. Art. 465 A(31) which provides that an indictment for first degree murder may read: "AB committed first degree murder of CD." The additional language was non-prejudicial surplusage which does not affect the validity of the indictment. La.C.Cr.P. Art. 465 B; see also La.C.Cr.P. Art. 486. Furthermore, a post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. State v. Storms, 406 So.2d 135 (La.1981).
[2] Prior to 1976, the death penalty was mandatory in Louisiana for all murders. The mandatory feature of the Louisiana statute was struck down by a five-to-four decision in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), and in Roberts v. Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977). The principal distinguishing features in the new statute enacted in 1976 were the granting of discretion to the jury to make a binding recommendation of sentence and the provision for a separate sentencing hearing at which each side may present evidence bearing on the jury's exercise of sentencing discretion.
[3] These considerations reflect the apparent legislative concern over those murders in the course of crimes which the public fears most (armed robberies, aggravated rapes, aggravated burglaries, etc.) and those murders committed by offenders who are most likely to kill again (one who kills for money, one who has killed before, one who kills several people in the criminal episode, etc.) and who therefore constitute the greatest threat to society.
[4] The reasoning in the English case was contained in an appendix. Since the death penalty was set aside on other grounds, that language was dicta.
[5] The first death penalty for Elmo Sonnier was reversed on rehearing on grounds not pertinent to this issue. See State v. Sonnier, 379 So.2d 1336 (La.1980). However, the court on original hearing had noted the "single consecutive course of conduct" language from English and stated that the statutory circumstance is applicable at least when "the offender kills two or more persons during a single consecutive course of conduct for the purpose of preventing any one of those killed from disclosing the murder of the other". This language was repeated in State v. Sonnier, 380 So.2d 1 (La.1979), a case involving Elmo Sonnier's brother as a participant in the same murders.
[6] A specifically intended killing without any of the aggravating elements became second degree murder.
[7] La.R.S. 14:30(3) provides:

"First degree murder is the killing of a human being:
* * * * * *
"(3) When the offender has specific intent to kill or inflect great bodily harm upon more than one person;" La.C.Cr.P. Art. 905.4(d) provides:
"The following shall be considered aggravating circumstances:
* * * * * *
"(d) the offender knowingly created a risk of death or great bodily harm to more than one person;"
[8] There was an apparently inadvertent omission of the phrase "risk of" before the phrase "death or great bodily harm of another", in view of the unambiguous language of the statute.
[9] The court modified the conviction to second degree murder. La.C.Cr.P. Art. 821.
[10] The author of this opinion dissented and does not attribute any significance to the use of the singular word "act" in La.R.S. 14:10(1). See La.R.S. 1:7, which provides that "(w)ords used in the singular number include the plural". For example, the same article defining specific intent uses the plural "consequences" (as opposed to consequence), and the criminal consequence requirement of first degree murder involves the killing of one human being. (Emphasis added) The word "act" is not limited to one body movement. Indeed, the definition of "act" is:

"1. anything done, being done, or to be done; performance, deed.
"2. The process of doing...." (Emphasis added) Random House Dictionary of the English Language (Unabridged edition 1966) The true issue was the legislative intent in proscribing as the capital offense of first degree murder a single killing when there is the "active desire" (specific intent) to kill or harm more than one person. In the opinion of the author, the Legislature did not intend to restrict first degree murder under La.R.S. 14:30(3) only to situations such as bombings.
[11] Four members of the court, three in dissent (who would have affirmed the conviction) and one in concurring, explicitly rejected a "single act" theory.
[12] Supreme Court Rule XXVIII § 5 (1974) provides that "the court may remand the matter for the development of facts relating to whether the sentence is excessive". (Emphasis supplied)
[13] In Smith, the defendant died in prison before the issue of the necessity of a new penalty hearing could be resolved. In Fuller, the defendant at the evidentiary hearing was allowed to accept a sentence of life imprisonment without parole.
[14] Ineffective assistance of counsel in the penalty phase of capital cases is a recurring problem. In many cases (including this one), defense counsel, after vigorously contesting the guilt phase, has turned the case over to the jury for penalty determination with little additional evidence or argument, perhaps because the emotional and physical strain on the sole defense counsel in the losing effort in the guilt phase lessens his ability to maintain the same performance level in the immediately following penalty phase. Possibly the trial judge can alleviate this problem by appointing two defense attorneys (as many trial judges now do) and by allocating specifically to one the principal responsibility for preparing evidence and argument for the penalty phase.

Another practice in the penalty phase which is helpful to a reviewing court is one in which the trial judge has the defendant and his attorney state on the record that they have read and discussed the list of statutory mitigating circumstances and have decided not to present any additional evidence. See State v. Summit, 454 So.2d 1100, 1107 (La.1984), note 12.
[15] In order to comply with the spirit of La.C. Cr.P. Art. 512, the new attorney should also have at least five years experience at the bar.