JOHNSON, C.J.,
dissents.
hThe district court erred when it dismissed as repetitive Daniel Blank’s claim that trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence at the penalty phase of this capital trial. Contrary to the district court’s determination, this Court did not previously consider any of the omitted mitigating evidence that post-conviction counsel now presents and this claim is deserving of thorough consideration in the district court. Therefore, I would grant the writ application and remand to the district court for further proceedings to address the claim of ineffective assistance of counsel that was próeedtírally defaulted in error.
A defendant at the penalty phase of a capital trial is entitled to a reasonably competent attorney acting as a' diligent and conscientious advocate for his life. State v. Fuller, 454 So.2d 119, 124 (La. 1984); State v. Berry, 430 So.2d 1005, 1007 (La.1983); State v. Myles, 389 So.2d 12, 28 (La.1980) (on reh’g). In other words, counsel’s role at capital sentencing resembles his role at the guilt phase in that he must “ensure that the adversarial testing process works to produce a just result. ...” Burger v. Kemp, 483 U.S. 776, 788-89, 107 S.Ct.- 3114, 3122-26, 97 L.Ed.2d 638 (1987). Because the district court declined to consider the merits of this claim, however, Daniel Blank was denied the opportunity to show that counsel failed to -undertake “a reasonable investigation [which] -would have uncovered miti- - gating evidence,” and that failing to put on the available mitigating evidence at the . penalty phase “was not a tactical decision but reflects a failure by counsel to adequately advocate for his client’s cause,” which resulted in “actual prejudice.”. State v. Hamilton, 92-2639, p. 6 (La.7/1/97), 699 So.2d 29, 32 (citing State v. Brooks, 94-2438, pp. 7-8 (La.10/15/95), 661 So.2d 1333, 1337-38; State v. Sanders, 93-0001, p. 25 (La.11/30/94), 648 So.2d 1272, 1291). As *104 post-conviction counsel urges, the ABA Guidelines provide an overview of counsel’s duty to investigate at the penalty phase, instructing that counsel explore, inter alia, the defendant’s family and social history for evidence of physical, sexual, or emotional abuse. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (1989).
Counsel’s dereliction of these duties may warrant relief even for a petitioner who has committed particularly heinous crimes. In Williams v. Taylor, 529 U.S. 362, 368, 120 S.Ct. 1495, 1500, 146 L.Ed.2d 389 (2000), the defendant committed violent assaults on two elderly victims, leaving one in a persistent vegetative state. Counsel failed to present evidence of the defendant’s nightmarish childhood; that he was “borderline mentally retarded;” that he helped law enforcement crack a prison drug ring and returned a guard’s missing wallet; and that prison officials would describe him as non-violent and capable of thriving behind bars. Taylor, 529 U.S. at 396-99, 120 S.Ct. at 1514-16. The defendant in Rompilla v. Beard, 545 U.S. 374, 377, 125 S.Ct. 2456, 2460, 162 L.Ed.2d 360 (2005) stabbed his victim repeatedly before setting fire to his body. Counsel failed to present evidence that the defendant was raised by abusive alcoholics and often confined to a small dog I «pen; and suffered brain damage causing extreme mental disturbance and impaired cognitive function. Rompilla, 545 U.S. at 392, 125 S.Ct. at 2468-69. In each case, the U.S. Supreme Court vacated the death sentence and remanded for re-sentencing, finding counsel’s inadequate investigation resulted in prejudice at sentencing.
Supreme Court jurisprudence emphasizes the sui generis nature of capital punishment and the resulting need for heightened scrutiny of proceedings that result in a death sentence.[1] This Court, too, has recognized that
Ineffective assistance of counsel in the penalty phase of capital cases is a recurring problem. In many cases ... defense counsel, after vigorously contesting the guilt phase, has turned the case over to the jury for penalty determination with little additional evidence or argument, perhaps because the emotional and physical strain [of the loss at] the guilt phase lessens his ability to maintain the same performance level in the immediately following penalty phase.
State v. Williams, 480 So.2d 721, 728 n. 14 (La.1985). The record here reveals that trial counsel overlooked readily available and compelling mitigating evidence which would have informed jurors about the abusive environment inside Daniel Blank’s childhood home. In particular, trial counsel failed to discover readily available mitigating evidence which could have been obtained by interviewing his relatives, to demonstrate the incestuous and abusive behavior inflicted by his grandfather, parents, and some siblings; and that, as a result of his family’s extreme poverty, he often went hungry and was generally iso *105 lated from the | community.[2] This omitted evidence indicating that Daniel Blank and his seven siblings were regularly subjected to sexual abuse and forced to subsist in extreme poverty throws into stark relief’ the peaceful portrait of Daniel Blank’s childhood and family life presented by. the defense penalty phase witnesses before the jurors began their sentencing deliberations. Because the district court erroneously dismissed this claim as repetitive, trial counsel was not examined at the post-conviction evidentiary hearing about any reasons he may have had for failing to unearth and present the mitigating evidence that post-conviction counsel has amassed.
Even cursory review of the mitigating circumstances enumerated in La.C.Cr. P. art. 905.5 should have prompted trial counsel to investigate Daniel Blank’s childhood and background for any relevant mitigating circumstances, as contemplated by art. 905.5(h). Much of the mitigating evidence that post-conviction counsel now offers appears to be precisely the sort that jurors would have-been required to consider in deciding whether death was the appropriate penalty. See Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) (“[EJvidenee about defendant’s background and character is Irrelevant because of the belief.... that defendants who commit criminal acts that are attributable to ... emotional and mental problems ... may be'less culpable than defendants who have no such excuse.”) (internal quotations and citation omitted), abrogated on other grounds, Atkins v. Virginia, 536 U.S. 304, 307, 122 S.Ct. 2242, 2244, 153 L.Ed.2d 335 (2002).[3] Ever mindful that Daniel Blank has confessed to brutally murdering Ms. Philippe and similarly attacking seven others, evidence of the extraordinary abuse and deprivation he is alleged to have endured as a child may nevertheless have swayed a juror in favor of imposing a life sentence. But because the district court erroneously found this claim repetitive, Daniel Blank has not had the opportunity to show that he was prejudiced in the absence of the omitted mitigating evidence, as were the defendants in Taylor and, Rompilla. Therefore, the claim should be remanded *106 for further proceedings rather than' dismissed prematurely and Daniel Blank’s right to state collateral review terminated before it has run its full and fair course.

. See Gilmore v. Taylor, 508 U.S, 333, 342, 113 S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993) C‘[W]e have held that the Eighth Amendment requires [in a capital case] a greater degree of accuracy and factfinding than would be true in a non-capital case.”) (citations omitted); see also Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (death penalty is “qualitatively different” and may require departure from usual rules); Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) ("[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long.... Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.”) (footnote omitted).

. Post-conviction counsel submitted multiple affidavits which included details, such as:
• Blank grew up in a family with an extensive history of incest and sexual abuse;
• Blank’s brother raped their seven-year-old sister Audrey, attempted to rape their 15-year-old sister Sally, and raped their cousin Dinah;
• Blank and his mother slept together often;
• Blank’s father and older brother would routinely touch family members inappropriately;
• Blank’s mother locked all the food away to prevent the children's access and the Blank children were always hungry and would forage for food; .
• The Blank children were sometimes locked out of the house and forced to sleep in the shed;
• The parents disciplined the Blank children by hitting them with various objects, including a 2x4;
• Blank’s father would frequently grab him by the neck and slam his head into a wáll;
• The Blank family lived in poverty and had , to grow most of their .food and made their clothes from potato sacks and other materials they found;
• The neighborhood children teased and ridiculed Blank and his1 siblings and referred to them as "rats” because they were unkempt with poor hygiene and no running water in the house.

. See also Eddings v. Oklahoma, 455 U.S, 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (refusal to consider family history and childhood abuse of 16-year-old facing the death penalty as mitigating factors violates Eight Amendment). Mitigation evidence bearing on the “life or death” sentencing decision is of necessity crucial, Cf. State v. Welland, 505 So.2d 702 (La. 1987) (conviction and sentence reversed .for erroneous exclusion of "crucial mitigating evidence").